# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DANIEL FLETCHER,

    Plaintiff,

v.                                             Case No. 09-CV-13904

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the court is a "Motion to Dismiss," filed on February 5, 2010, by Defendant Center for Forensic Psychiatry ("CFP") and CFP's employees: Defendants Dr. Rita Garg, Dr. Thomas E. Fluent, Joseph Corso, and Bill Clark. A hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion.

## I. BACKGROUND[1]

In 2006, Plaintiff Daniel Fletcher, who suffers from bipolar and personality disorders, had a pending legal matter in the Oakland County Circuit Court. (Pl.'s Compl. ¶¶ 25, 26.) On June 21, 2006, the Honorable David Reader of the Livingston County Circuit Court issued a Maintenance Order. (*Id.* ¶ 27.) Plaintiff states that the order required his "transportation to and from Defendant [CFP] while awaiting and

---

[1]The relevant background facts are taken from Plaintiff's Complaint and are accepted as true for purposes of this motion.

participating in Court appearances to preserve his mental and physical status."[2]  (*Id.*)

Dr. Thomas Fluent, a Board Certified General and Child/Adolescent Psychiatrist at CFP, drafted a letter to an attorney two months later explaining the necessity of a Maintenance Order:

> Mr. Fletcher left the Center for Forensic Psychiatry for five days in early to mid August to attend a hearing [at] Oakland County Court.  He resided at the Oakland County Jail during this time.  Upon return to the Center for Forensic Psychiatry, Mr. Fletcher appeared to have deteriorated significantly in regards to his mental and emotional health.
>
> It is our opinion as a treatment team that Mr. Fletcher during the trial process would be best served by remaining at the Center for Forensic Psychiatry on a Maintenance Order, pending the outcome/resolution of his legal case.

(Pl.'s Resp. at 8; Pl.'s Resp., Ex. A.)

In early October 2006, Plaintiff was incarcerated at Defendant Oakland County Jail[3] because CFP allegedly failed or refused to pick him up from Oakland County Circuit Court.  (Pl.'s Compl. ¶ 29.)  Plaintiff repeatedly asked officers at the jail to return him to CFP in compliance with the Maintenance Order and to provide him with his psychiatric medications, but the officers ignored his requests.  (*Id.* ¶¶ 30-33.)  Defendant John/Scott Doe, a counselor at the Oakland County Jail, interviewed Plaintiff, classified him as an inmate with mental issues, and recommended his transfer

---

[2] Plaintiff did not attach the Maintenance Order to his Complaint or his response to the motion to dismiss.  Thus, the precise requirements of the Maintenance Order are not clear.

[3] The Oakland County Jail is a building.  The court is doubtful—to say the least—whether this building is a legal entity capable of either suing or being sued.

2

to the "K Block," a holding area surrounded by windows near the guard post. (*Id.* ¶¶ 35-38.)

John/Scott Doe later met with Plaintiff in the "K Block." (*Id.* ¶ 40.) During the meeting, Plaintiff asked John/Scott Doe when he would be transferred to CFP and when he would receive his medication. (*Id.* ¶¶ 42-43.) John/Scott Doe replied, "[W]hen I deem it time." (*Id.* ¶ 44.) Plaintiff was so disgusted with this response that he turned his back. (*Id.* ¶ 45.) This enraged John/Scott Doe, who stated "Don't turn your back on me." (*Id.* ¶ 46.) John/Scott Doe then repeatedly kicked Plaintiff in his lower back causing his head to strike a metal sink. (*Id.* ¶¶ 46-47.) When Plaintiff attempted to get up, John/Scott Doe grabbed Plaintiff by his neck and said, "Do something, say something to me mother fucker." (*Id.* ¶ 48.) John/Scott Doe then smashed Plaintiff's head into the metal sink again, which caused Plaintiff to slump against the wall. (*Id.* ¶ 49.) All of this was observed by Defendant Jane Doe, a nurse at the Oakland County Jail, who finally said, "That's enough John/Scott, I am not going to watch this." (*Id.* ¶ 50.) John/Scott Doe responded, "Okay," as Plaintiff became unconscious. (*Id.* ¶ 51.)

Later that day, Plaintiff woke up in the middle of the floor in the "K Block." (*Id.* ¶ 52.) He had a bloody nose and excruciating pain in his head. (*Id.* ¶ 53.) Upon looking in the mirror, he observed a quarter-sized hole in his head. (*Id.* ¶ 54.) Plaintiff then sneezed, which caused blood to fill his sinus cavity and pour out of his nose. (*Id.* ¶ 55.) Plaintiff pressed the "911 button" and heard two jail officers, Defendants John Doe (2) and John Doe (3), laughing and arguing. (*Id.* ¶ 56.) Plaintiff requested to see a doctor but his requests were ignored. (*Id.* ¶ 57.) After at least seven more "911" calls, Plaintiff was finally escorted to the infirmary. (*Id.* ¶ 58.)

At the infirmary, Nurse Jane Doe did not acknowledge the quarter-sized hole in his head and stated that it was "just red." (*Id.* ¶¶ 59-61.) After his examination by Jane Doe, Defendant John Doe (4) transferred Plaintiff to a holding cell outside the infirmary. (*Id.* ¶ 63.) Defendant John Doe (5) then transferred Plaintiff back to the "K Block," denying Plaintiff's request to be taken to the hospital for x-rays. (*Id.* ¶¶ 64-66.) Upon return to the "K Block," Plaintiff's face became swollen and turned black and blue. (*Id.* ¶ 68.)

The next morning, Plaintiff was transferred to CFP. (*Id.* ¶ 72.) Defendant Bill Clark, CFP's head of security, photographed Plaintiff's injuries upon arrival and ordered him to be transported to St. Joe's Hospital for x-rays. (*Id.* ¶¶ 22, 74.) Doctors diagnosed Plaintiff as having a right orbital depressed comminuted fracture and performed a surgery that placed five plates and twenty-five screws into Plaintiff's head. (*Id.* ¶¶ 74-77.) After his surgery, Plaintiff returned to CFP, where he was called "Zipperhead" by the other inmates because of the forty-seven staples in his head. (*Id.* ¶ 78.)

Approximately three years later, on October 2, 2009, Plaintiff initiated this case against the Michigan Department of Corrections, Oakland County Jail, CFP, Sheriff Michael Bouchard, John/Scott Doe, John Doe (2), John Doe (3), John Doe (4), John Doe (5), Jane Doe, Dr. Rita Garg, Dr. Thomas E. Fluent, Joseph Corso, and Bill Clark. Plaintiff seeks damages in excess of $30,000,000.00 and alleges the following counts: (1) "Violation of 42 U.S.C. § 1983 and the 8th Amendment of the United States

Constitution by All Defendants,"[4] (2) "42 U.S.C. § 1983 Violations by Oakland County Sheriff," (3) "42 U.S.C. § 1983 Violations by Michigan Department of Corrections," and (4) "Negligence/Gross Negligence of All Defendants." On February 5, 2010, Defendants Dr. Rita Garg, Dr. Thomas E. Fluent, Joseph Corso, and Bill Clark (collectively "the individual Defendants"), together with Defendant CFP, filed the present motion to dismiss.

## II. STANDARD

When ruling on a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

---

[4]Plaintiff presumably means a violation of rights secured by the Eighth Amendment and actionable under 42 U.S.C. § 1983.

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 550 U.S. at 555 (citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

## III. DISCUSSION

Plaintiff brings two claims against CFP and the individual Defendants: (1) a § 1983 claim and (2) a state-law claim for negligence/gross negligence. Plaintiff is suing "each and every Defendant in both their individual and official capacities."[5] (Pl.'s Compl. ¶ 4.)

### A. Section 1983

### 1. State Agency and State Officials in Their Official Capacities

Defendants argue that the § 1983 claim against CFP and the individual Defendants in their official capacities is barred by the Eleventh Amendment. (Defs.' Mot. ¶ 1.) Plaintiff argues that his § 1983 claim is not barred by the Eleventh Amendment because he "has alleged sufficient facts that, if proved, could result in a favorable verdict" and his claim falls within "the 'providing medical care or treatment to' exception to the 11th Amendment." (Pl.'s Resp. at 2, 6.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "The Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials in their official capacities for

---

[5] Defendants argue that Plaintiff has not specified whether he is suing the individual Defendants in their official or individual capacities. (Defs.' Mot. Br. at 3.) It is true that Plaintiff's general assertion that he is suing every Defendant in their individual and official capacity does not make sense because some of the Defendants are government entities incapable of being sued in an individual capacity. However, the court will construe Plaintiff's assertion as applying to all Defendants who are capable of being sued in an individual capacity.

7

damages." *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009); *see McCoy v. State of Michigan*, No. 08-1641, 2010 WL 841198, at *7 (6th Cir. Mar. 10, 2010) ("Because sovereign immunity extends to 'state instrumentalities,' and the MDOC is 'an arm of the State of Michigan,' the MDOC is entitled to sovereign immunity on the § 1983 claim as well." (citations omitted)).

The CFP is an entity within the Michigan Department of Community Health, Mich. Comp. Laws § 330.1128, which is a principal state agency of the State of Michigan, *id.* § 330.3101. The individual Defendants are state employees being sued in their official capacities. Thus, Plaintiff's § 1983 claim against CFP and the individual Defendants in their official capacities is barred by the Eleventh Amendment.

Plaintiff's argument that he could obtain a "favorable verdict" misses the mark. Whether Plaintiff could obtain a favorable verdict is irrelevant to an Eleventh Amendment analysis. Plaintiff's argument regarding an alleged "providing medical care or treatment to" exception to the Eleventh Amendment is without basis. The court is not aware of, and Plaintiff provides no citation to, such an exception.

In addition, CFP and the individual Defendants in their official capacities are not deemed "persons" under § 1983. Section 1983 imposes liability on a "person," who under color of law, subjects another person to the deprivation of a constitutional right. 42 U.S.C. § 1983. States and state officials acting in an official capacity are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Dulai v. Mich. Dep't of Cmty. Health*, 71 F. App'x 479, 481 (6th Cir. 2003) ("*Will* precludes Plaintiff's action against [the Michigan Department of Community Health].").

Accordingly, Plaintiff's § 1983 claim against CFP and the individual Defendants in their official capacities fails.

### 2. State Officials In Their Individual Capacities

Defendants argue that the § 1983 claim against them in their individual capacities fails to state a claim. Plaintiff argues that he has stated a § 1983 claim based on the individual Defendants' deliberate indifference to his medical needs. (Pl.'s Resp. at 3.) Specifically, Plaintiff contends that each individual Defendant knew that his condition required "consistent and constant management, timely administration of medications and continuous monitoring," yet they failed to retrieve him from the Oakland County Jail. (*Id.* at 3-4.)

To plead an Eighth Amendment violation for lack of medical care, a prisoner must show "deliberate indifference to serious medical needs [that] constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)). An Eighth Amendment violation includes (1) an objective element of "serious medical need," and (2) a subjective element of "deliberate indifference" by the treating professional. *Id.*

Under the objective element, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)). As the second, subjective component to prove an Eighth Amendment violation, a plaintiff must show that Defendant "possessed 'a sufficiently culpable state of mind in denying medical care' . . . . greater than mere negligence."

9

*Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Blackmore*, 390 F.3d at 895). "Deliberate indifference" means at least "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderhofer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff has failed to state a deliberate indifference claim against the individual Defendants. Plaintiff's Complaint does not set forth any facts demonstrating that the individual Defendants had a duty to retrieve Plaintiff from the Oakland County Jail and transport him to CFP. Plaintiff generally avers that "Center [f]or Forensic Psychiatry failed or refused to pick [him] up from the Oakland County Circuit Court forcing his entrance into Defendant Oakland County Jail's facility." (Pl.'s Compl. ¶ 29.) This general allegation is insufficient to show that any of the individual Defendants were responsible for retrieving Plaintiff and that their failure to do so violated his constitutional rights. The Sixth Circuit "has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what each defendant did to violate the asserted right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)). Plaintiff has not alleged what each Defendant did to violate his rights.

Indeed, notably absent from Plaintiff's Complaint is any specific allegation concerning Defendants Dr. Rita Garg, Dr. Thomas Fluent, and Joseph Corso. Instead,

10

Plaintiff merely states their position and that they were responsible for enforcing and abiding by CFP's regulations. (Pl.'s Compl. ¶¶ 20, 21, 23.) This is insufficient to state a deliberate indifference claim. The only specific factual allegation in Plaintiff's Complaint concerning an individual Defendant involves Bill Clark. Plaintiff alleges that Bill Clark photographed Plaintiff's injuries upon arrival at CFP and ordered him to be transported to St. Joe's Hospital for x-rays. (Pl.'s Compl. ¶ 74.) This action hardly demonstrates recklessness; to the contrary, it demonstrates that Plaintiff's medical needs were addressed. In his response to Defendants' motion to dismiss, Plaintiff attaches a letter from Dr. Thomas Fluent. (Pl.'s Resp., Ex. A.) This letter, which is not mentioned in Plaintiff's Complaint, merely states that it was the treatment team's opinion that Plaintiff remain at CFP pending the resolution of his case in Oakland County. It does not state that Dr. Fluent would be responsible for retrieving Plaintiff from the Oakland County Jail or that he thought Plaintiff would be subjected to physical abuse by the staff at the Oakland County Jail.

Also, Plaintiff has failed to allege facts which demonstrate that the actions of the individual Defendants were a proximate cause of the deprivation of his constitutional rights. "[A] public official is liable under § 1983 only if he causes the plaintiff to be subjected to a deprivation of his constitutional rights." *Mckinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2004) (citations and quotations marks omitted). The individual Defendants were not a proximate cause of the alleged deprivation of Plaintiff's constitutional rights. Instead, the jail officials who allegedly assaulted Plaintiff and then failed to provide medical treatment caused the deprivation of his rights. Accordingly, Plaintiff's § 1983 claim against the individual Defendants is dismissed.

11

**B. Negligence/Gross Negligence**

**1. Claim Against CFP and the Individual Defendants in Their Official Capacities**

Defendants argue that Plaintiff's negligence/gross negligence claim against CFP and the individual Defendants in their official capacities is barred by the Eleventh Amendment. (Defs.' Mot. Br. at 5.) Defendants further argue that the negligence/gross negligence claim against CFP is barred by Michigan's governmental immunity statute. (*Id.* at 6-7; Defs.' Reply at 2.) Plaintiff again argues that "the 'providing medical care or treatment to' exception of the 11th Amendment" preserves his claim. (Pl.'s Resp. at 6.)

As discussed above, "[t]he Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2007). This principle also applies to state-law claims brought in federal court. *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 121 (1984). With respect to a person sued in his official capacity, "an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." *Cady*, 574 F.3d at 344 (quoting *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)).

Plaintiff has sued CFP, a principal agency of the State of Michigan, as well as state employees in their official capacities. The State of Michigan has not waived its sovereign immunity. Accordingly, the negligence/gross negligence claim brought against CFP and the individual Defendants in their official capacities is barred by the Eleventh Amendment.

12

In addition, Plaintiff's state law claim against CFP is barred by Michigan's governmental immunity statute, which provides that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407. There are five statutory exceptions, but none are applicable to this case. *See id.* §§ 691.1402, 1405, 1406, 1413, 1407(4). Also, the gross negligence exception to governmental immunity, discussed *infra*, does not apply to state agencies. *Gracey v. Wayne County Clerk*, 540 N.W.2d 710, 714 (Mich. Ct. App. 1995), *overruled in part on other grounds by Am. Transmissions, Inc. v. Attorney General*, 560 N.W.2d 50 (Mich. 1997). Accordingly, CFP is immune from Plaintiff's negligence/gross negligence claim.

## 2. Claim Against the Individual Defendants

Defendants argue that Plaintiff's state law claim is barred by governmental immunity. (Defs.'s Mot. ¶ 3; Defs.' Mot. Br. at 8-10.) Specifically, Defendants argue that a claim of negligence is not an exception to governmental immunity and Plaintiff has failed to allege facts that demonstrate gross negligence. (Defs.' Mot. Br. at 8.) Plaintiff argues that he has alleged sufficient facts to show that the individual Defendants were grossly negligent. (Pl.'s Resp. at 5, 14.)

Employees of a government agency are immune from tort liability for an injury caused while in the course of employment if: (a) the employee "is acting or reasonably believes he or she is acting within the scope of his or her authority," (b) "[t]he governmental agency is engaged in the exercise or discharge of a governmental function," and (c) the employee's "conduct does not amount to gross negligence that is *the* proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2)

13

(emphasis added). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(7)(a). Conduct is the proximate cause if it is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000).

There is no question that (a) and (b) are met in this case. *See* Mich. Comp. Laws § 691.1407(2). Thus, Plaintiff's allegation of mere negligence is barred by Michigan's governmental immunity statute. *See id.* Regarding Plaintiff's gross negligence claim, he has not alleged facts that show that the individual Defendants were grossly negligent or that their actions constituted the proximate cause of Plaintiff's injuries.

Plaintiff does not allege conduct by the individual Defendants that could be construed as "so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(7)(a). Indeed, he does not allege any specific facts in his Complaint concerning Dr. Rita Garg, Dr. Thomas Fluent, and Joseph Corso. The allegation that Bill Clark took a picture and had Plaintiff transported to the hospital does not evince reckless conduct. (Pl.'s Compl. ¶ 74.) Moreover, Plaintiff does not allege facts demonstrating that the Maintenance Order imposed a duty on the individual Defendants to retrieve Plaintiff from the Oakland County Jail or that they knew their failure to retrieve him would result in Plaintiff being assaulted by a jail employee. The facts in Plaintiff's Complaint provide no basis for a jury to find the individual Defendants grossly negligent.

14

Further, Plaintiff's Complaint establishes that the individual Defendants were not the proximate cause of his alleged injuries. The "one most immediate, efficient, and direct cause" preceding Plaintiff's injury was the alleged assault committed by the jail employee. *Robinson*, 613 N.W.2d at 317. Plaintiff acknowledges this in his response when he states, "The Defendants 'gross negligence' in failing to comply with the Maintenance Order was the proximate cause of Mr. Fletcher's injuries when he was forced to remain in Defendant OCJ custody and *suffer the assault and battery that resulted in the injuries*." (Pl.'s Resp. at 14 (emphasis added).) It was Plaintiff suffering the assault and battery that directly resulted in his injuries, not any action or inaction by the individual Defendants. Accordingly, Plaintiff's gross negligence claim is barred by the governmental immunity statute. *See* Mich. Comp. Laws § 691.1407(2).

Plaintiff relies on *Briggs v. Oakland County*, 742 N.W.2d 136 (Mich. Ct. App. 2001), in which the Michigan Court of Appeals applied the medical care exception to governmental immunity, Mich. Comp. Laws § 691.1407(4). Under this exception, an employee of a governmental agency is not immune "with respect to providing medical care or treatment to a patient, except medical care or treatment provided to a patient in a hospital owned or operated by the department of community health." Mich. Comp. Laws § 691.1407(4). In *Briggs*, the court concluded that the medical care exception to governmental immunity applied to the defendants who provided medical treatment to an inmate at the Oakland County Jail. 742 N.W.2d at 137. Here, the individual Defendants were not providing medical treatment to Plaintiff while he was incarcerated in the Oakland County Jail. It was Nurse Jane Doe, not the individual Defendants, who provided medical treatment to Plaintiff at the Oakland County Jail. Any medical

15

treatment the individual Defendants provided would not fall within the exception because it was provided at CFP, which is "a hospital owned or operated by the department of community health."  Mich. Comp. Laws § 691.1407(4).

## IV.  CONCLUSION

Plaintiff's claims against CFP and the individual Defendants are barred by the Eleventh Amendment, barred by Michigan's governmental immunity statute, and fail to state a claim upon which relief can be granted.  Accordingly,

IT IS ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 7] is GRANTED. The claims against Defendants Center for Forensic Psychiatry, Dr. Rita Garg, Dr. Thomas E. Fluent, Joseph Corso, and Bill Clark are DISMISSED.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 30, 2010, by electronic and/or ordinary mail.

    S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522