# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANIEL FLETCHER,

        Plaintiff,

v.                                                                          Case No. 09-CV-13904

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Before the court is a "Motion to Dismiss," filed on April 7, 2010, by Defendants

Oakland County Jail and Sheriff Michael Bouchard. A hearing on this motion is

unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will

grant in part and deny in part Defendants' motion.

## I. BACKGROUND[1]

In 2006, Plaintiff Daniel Fletcher, who suffers from bipolar and personality

disorders, had a pending legal matter in the Oakland County Circuit Court. (Pl.'s

Compl. ¶¶ 25, 26.) On June 21, 2006, the Honorable David Reader of the Livingston

County Circuit Court issued a Maintenance Order. (*Id.* ¶ 27.) Plaintiff states that the

order required his "transportation to and from [the Center for Forensic Psychiatry

('CFP')] while awaiting and participating in Court appearances to preserve his mental

and physical status." (*Id.*)

_____

[1]The relevant background facts are taken from Plaintiff's Complaint and are
accepted as true for purposes of this motion.

In early October 2006, Plaintiff was incarcerated at Defendant Oakland County Jail because CFP allegedly failed or refused to pick him up from Oakland County Circuit Court.  (*Id.* ¶ 29.)  Plaintiff repeatedly asked officers at the jail to return him to CFP in compliance with the Maintenance Order and to provide him with his psychiatric medications, but the officers ignored his requests.  (*Id.* ¶¶ 30-33.)  Defendant John/Scott Doe, a counselor at the Oakland County Jail, interviewed Plaintiff, classified him as an inmate with mental issues, and recommended his transfer to the "K Block," a holding area surrounded by windows near the guard post.  (*Id.* ¶¶ 35-38.)

John/Scott Doe later met with Plaintiff in the "K Block."  (*Id.* ¶ 40.)  During the meeting, Plaintiff asked John/Scott Doe when he would be transferred to CFP and when he would receive his medication.  (*Id.* ¶¶ 42-43.)  John/Scott Doe replied, "[W]hen I deem it time."  (*Id.* ¶ 44.)  Plaintiff was so disgusted with this response that he turned his back.  (*Id.* ¶ 45.)  This enraged John/Scott Doe, who stated "Don't turn your back on me."  (*Id.* ¶ 46.)  John/Scott Doe then repeatedly kicked Plaintiff in his lower back causing his head to strike a metal sink.  (*Id.* ¶¶ 46-47.)  When Plaintiff attempted to get up, John/Scott Doe grabbed Plaintiff by his neck and said, "Do something, say something to me mother fucker."  (*Id.* ¶ 48.)  John/Scott Doe then smashed Plaintiff's head into the metal sink again, which caused Plaintiff to slump against the wall.  (*Id.* ¶ 49.)  All of this was observed by Defendant Jane Doe, a nurse at the Oakland County Jail, who finally said, "That's enough John/Scott, I am not going to watch this."  (*Id.* ¶ 50.)  John/Scott Doe responded, "Okay," as Plaintiff became unconscious.  (*Id.* ¶ 51.)

Later that day, Plaintiff woke up in the middle of the floor in the "K Block."  (*Id.* ¶ 52.)  He had a bloody nose and excruciating pain in his head.  (*Id.* ¶ 53.)  Upon looking

2

in the mirror, he observed a quarter-sized hole in his head. (*Id.* ¶ 54.) Plaintiff then sneezed, which caused blood to fill his sinus cavity and pour out of his nose. (*Id.* ¶ 55.) Plaintiff pressed the "911 button" and heard two jail officers, Defendants John Doe (2) and John Doe (3), laughing and arguing. (*Id.* ¶ 56.) Plaintiff requested to see a doctor but his requests were ignored. (*Id.* ¶ 57.) After at least seven more "911" calls, Plaintiff was finally escorted to the infirmary. (*Id.* ¶ 58.)

At the infirmary, Nurse Jane Doe did not acknowledge the quarter-sized hole in his head and stated that it was "just red." (*Id.* ¶¶ 59-61.) After his examination by Jane Doe, Defendant John Doe (4) transferred Plaintiff to a holding cell outside the infirmary. (*Id.* ¶ 63.) Defendant John Doe (5) then transferred Plaintiff back to the "K Block," denying Plaintiff's request to be taken to the hospital for x-rays. (*Id.* ¶¶ 64-66.) Upon return to the "K Block," Plaintiff's face became swollen and turned black and blue. (*Id.* ¶ 68.)

The next morning, Plaintiff was transferred to CFP. (*Id.* ¶ 72.) Defendant Bill Clark, CFP's head of security, photographed Plaintiff's injuries upon arrival and ordered him to be transported to St. Joe's Hospital for x-rays. (*Id.* ¶¶ 22, 74.) Doctors diagnosed Plaintiff as having a right orbital depressed comminuted fracture and performed a surgery that placed five plates and twenty-five screws into Plaintiff's head. (*Id.* ¶¶ 74-77.) After his surgery, Plaintiff returned to CFP, where he was called "Zipperhead" by the other inmates because of the forty-seven staples in his head. (*Id.* ¶ 78.)

Approximately three years later, on October 2, 2009, Plaintiff initiated this case against the Michigan Department of Corrections, Oakland County Jail, CFP, Sheriff

Michael Bouchard, John/Scott Doe, John Doe (2), John Doe (3), John Doe (4), John Doe (5), Jane Doe, Dr. Rita Garg, Dr. Thomas E. Fluent, Joseph Corso, and Bill Clark. Plaintiff seeks damages in excess of $30,000,000.00 and alleges the following counts: (1) "Violation of 42 U.S.C. § 1983 and the 8th Amendment of the United States Constitution by All Defendants,"[2] (2) "42 U.S.C. § 1983 Violations by Oakland County Sheriff," (3) "42 U.S.C. § 1983 Violations by Michigan Department of Corrections," and (4) "Negligence/Gross Negligence of All Defendants."

On February 5, 2010, Defendants Dr. Rita Garg, Dr. Thomas E. Fluent, Joseph Corso, Bill Clark, and CFP filed a motion to dismiss. The court granted the motion, holding that the claims against these Defendants were barred by the Eleventh Amendment, barred by Michigan's governmental immunity statute, and failed to state a claim upon which relief can be granted. (3/30/10 Order at 16.)

Defendants Oakland County Jail and Sheriff Michael Bouchard filed the present motion to dismiss on April 7, 2010. During the scheduling conference, the court set a briefing schedule on this motion. (4/27/10 Order at 1.) On May 7, 2010, Plaintiff filed a response, and on May 19, 2010, Defendants filed a reply.

## II. STANDARD

When ruling on a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489

---

[2]Plaintiff presumably means a violation of rights secured by the Eighth Amendment and actionable under 42 U.S.C. § 1983.

(6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 550 U.S. at 555 (citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

## III.  DISCUSSION

### A.  Oakland County Jail

Defendants initially argued in their motion that the Oakland County Jail was not a legal entity subject to suit.  (Defs.' Mot. Br. at 2.)  On May 18, 2010, pursuant to the parties' stipulation, the court dismissed the Oakland County Jail.  In his response to the motion to dismiss, Plaintiff requests leave to amend his complaint to name Oakland County in the place of Oakland County Jail and have the amendment relate back to the time of filing of the complaint for statute of limitations purposes.  (Resp. at 6-10.)

Plaintiff's request is moot because Plaintiff has sued Oakland County Sheriff Michael Bouchard in his official capacity, and official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).  If the entity receives notice and an opportunity to respond, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Thus, by filing suit against Sheriff Bouchard in his official capacity, Plaintiff has filed suit against Oakland County,[3] and his request to

---

[3]Defendants argue that a claim against Sheriff Bouchard in his official capacity is a suit against the Oakland County Jail, which is not an entity capable of being sued.

amend his complaint to add Oakland County is moot. *See Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his official capacity, it is nothing more than a suit against Franklin County itself.").

## B. Oakland County Sheriff Michael Bouchard

### 1. Section 1983

Defendants argue that Plaintiff has failed to state a § 1983 claim against Sheriff Bouchard. (Defs.' Mot. Br. at 3.) Specifically, Defendants argue that the allegations in Plaintiff's complaint are pled with inadequate specificity and merely "set out a series of conclusory allegations that all Defendants employed within the jail were acting pursuant to a policy and/or custom implemented by either the Sheriff or the Sheriff's office and it is this policy and/or custom that was the proximate cause of his injury." (*Id.* at 5.) Plaintiff argues that he has stated a deliberate indifference claim under the Eighth Amendment. (Resp. at 15-17.)

#### a. Individual Capacity

It is unclear whether Plaintiff has sued Sheriff Bouchard in an individual capacity in addition to his official capacity. Plaintiff states that he "brings suit against each and every Defendant in both their individual and official capacities." (Compl. ¶ 4.) However, he also states that "Defendant, Sheriff Michael Bouchard is being sued in his official capacity and the remaining Defendant officers and/or deputies are being sued in their

---

(Defs.' Mot. Br. at 6-7.) Official-capacity suits, however, are deemed suits against the entity of which the official is an agent, not the building in which the official works. *See Graham*, 473 U.S. at 165-66.

individual capacities." (*Id.* ¶ 16.) This allegation is both unnecessary and incomplete if Plaintiff was actually suing each and every Defendant in an individual and official capacity.

If Plaintiff is indeed suing Sheriff Brouchard in an individual capacity, he has failed to state a claim. Sheriff Brouchard cannot be held liable under § 1983 based solely on *respondeat superior* or the right to control employees. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). All of Plaintiff's allegations concerning the Oakland County Sheriff involve the "policies and/or customs" of the Sheriff's Office. Plaintiff does not allege that Sheriff Bouchard participated in the incident that led to Plaintiff's injuries or otherwise "authorized, approved, or knowingly acquiesced in it." *Id.* (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Accordingly, Plaintiff has failed to state a claim against Sheriff Bouchard in his individual capacity.

### b. Official Capacity

As stated above, Plaintiff has brought a § 1983 claim against Sheriff Bouchard in his official capacity. "Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself, and thus a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). Under *Monell* and its progeny, a county may be held liable only (1) "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

injury," *Monell*, 436 U.S. at 694, and (2) when there is an "affirmative link between the policy and the particular constitutional violation alleged," *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also Petty*, 478 F.3d at 347. Plaintiff must establish that Oakland County's official policies or customs (or lack thereof) were a "moving force" behind the deprivation of Plaintiff's rights and arose as a result of "deliberate indifference" to his rights. *See Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996).

"[I]n order to impose municipal liability a plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997)). Once the policy is identified, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs,* 520 U.S. at 403-04. "[T]o satisfy the *Monell* requirements[,] a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted).

Plaintiff alleges that "the Oakland County Sheriff's Office developed and maintained policies or customs exhibiting deliberate indifference to the constitutional

rights of persons who were being housed and/or held at Oakland County Jail which resulted in the violation of Daniel Fletcher's constitutional rights." (Compl. ¶ 93.) Plaintiff states that the Sheriff's Office had the following "policies and/or customs": (1) "to knowingly allow inmates to be physically and psychologically assaulted by its employees while incarcerated at the jail"; (2) "to knowingly allow its employees to ignore Maintenance Orders placed in the effort of protecting vulnerable mental health inmates"; (3) "to knowingly allow its employees to physically and psychologically assault its vulnerable mental health inmates"; (4) "to inadequately train deputies and/or officers working at the jail facility relative to the handling of physical and psychological abuse complaints from inmates against their abusive handlers, the officers/deputies, nurses and counselors"; (5) "to return psychologically or physically abused inmates back to the cell where the abusive deputies and/or officers, nurses and counselors were present, thereby putting the abused at an even greater risk of harm"; and (6) "to inadequately train and supervise its officers, deputies, nurses and counselors, with respect to the constitutional rights of inmates, thereby creating the atmosphere among deputies, officers, nurses and counselors, that the . . . abuse upon [Plaintiff] was acceptable and would go unpunished." (*Id.* ¶¶ 94-99.)

The allegations in Plaintiff's complaint are hardly a model for specific pleading. Nonetheless, at the Rule 12(b)(6) stage and accepting Plaintiff's allegations as true, the court finds that Plaintiff has stated a claim under *Monell*. *Twombly*, 550 U.S. at 570; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that heightened pleading standard does not apply to municipal liability claims under § 1983). Plaintiff alleges that he was assaulted by a jail counselor

and that jail officials then ignored his pleas for assistance, medical care, and transport in compliance with the Maintenance Order. Plaintiff has also identified seven policies and/or customs of the Oakland County Sheriff's Office. In alleging these policies or customs, Plaintiff refers to "mental health inmates" and "physical and psychological complaint*s*" and thus implies that he has knowledge of multiple prisoners and multiple instances of potential constitutional rights violations. *See Owens v. Corr. Med. Servs., Inc.*, No. 1:07-cv-934, 2009 WL 2242686, at *7 (W.D. Mich. July 23, 2009). These policies or customs, if proven, could demonstrate a causal link between the County and the particular facts of Plaintiff's incident—the alleged assault and lack of medical care. *Bd. of County Comm'rs,* 520 U.S. at 403-04; *Garner*, 8 F.3d at 364. If Plaintiff can prove that the Sheriff's Office had a custom of assaulting mentally ill inmates, inadequately training jail employees on the handling of mentally ill inmates, and inadequately handling complaints of abuse from mentally ill inmates, then a jury could conceivably find Oakland County liable.

The allegations in Plaintiff's complaint are more specific than the allegations that the Sixth Circuit seemed to indicate would pass muster in *Petty*. There, the plaintiff alleged that the acts giving rise to his deliberate indifference claim were proximately caused by:

> certain customs and policies of Defendants County, Franklin County Sheriff's Department and Karnes, including but not limited to, a failure to adequately and reasonably train, supervise and discipline officers in such a way to properly protect the constitutional rights of citizens; and a specific set of policies established during the days of the incidents described above, which had the effect of permitting, encouraging, approving and ratifying violations of the constitutional rights of citizens, including Plaintif[f], as described above.

*Petty*, 478 F.3d at 347-48. The district court granted the defendants' motion to dismiss under Rule 12(b)(6) because the complaint failed to identify an "official custom or policy of Franklin County with regard to his constitutional claim," and because it failed to allege facts showing that the plaintiff's injuries were "causally linked to the County's alleged failure to train and/or supervise." *Id.* at 248.

The Sixth Circuit concluded that the plaintiff's claims could not survive summary judgment; however, it questioned the district court's dismissal at the Rule 12(b)(6) stage. *Id.* The court stated,

> Given the allegations that Petty makes in his complaint, it is not immediately clear what more Petty could have alleged with respect to the policies that Franklin County might or might not have. We wonder how Petty would necessarily know, at the point of his complaint, and without the benefit of discovery, whether such a custom or policy might exist, and if it does exist, what its contours might be or how exactly it effected a violation of his constitutional rights.

*Id.*

Although pre-*Twombly*, *Petty* provides guidance in assessing the sufficiency of Plaintiff's complaint. Similar to Petty's allegation that Franklin County had a policy of failing to "adequately and reasonably train, supervise and discipline officers in such a way to properly protect the constitutional rights of citizens," Plaintiff alleges that the Oakland County Sheriff's Office had the policy or custom "to inadequately train or supervise its officers, deputies, nurses and counselors, with respect to the constitutional rights of the inmates." (Compl. § 99.) This allegation, however, was the least specific allegation regarding the customs or policies of the Sheriff's Office. Plaintiff goes on to allege six more specific policies relating to the handling of mentally ill inmates, including

failure to comply with maintenance orders, as well as inmate abuse and the improper handling of complaints of abuse.

Moreover, other courts in the Eastern District of Michigan have found less specific allegations concerning a municipality's customs or policies to be sufficient to withstand a motion to dismiss. *Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611 (E.D. Mich. Jan. 15, 2008) (Duggan, J.) (finding sufficient the pro se plaintiff's allegation that "[CMS], as the State Contracted Medical provider, [has a] custom and standard of practice to advise their doctors against informing and treating patients with serious illnesses [ sic ] (such as Hepatitis C) and as such [CMS] has violated Plaintiff's 8th Amendment rights" (second alteration added)); *Cleary v. County of Macomb*, No. 06-15505, 2007 WL 2669102 (E.D. Mich. Sept. 6, 2007) (Duggan, J.) (finding sufficient the plaintiff's allegations that, *inter alia*, Macomb County "was aware of a pattern of constitutional violations," that the individual defendants were "acting pursuant to the official policy, practice, or custom" of Macomb County, and that Macomb County "intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis" the individual defendants).  Although the court certainly does not find Plaintiff's pleadings to be *more* than sufficient to survive a motion to dismiss, based on the above-cited case law and applying the Rule 12(b)(6) standard, the court finds Plaintiff's allegations to be minimally sufficient.  Defendants' motion to dismiss will therefore be denied as to Sheriff Bouchard in his official capacity.

## 2. Negligence/Gross Negligence

Defendants argue that Plaintiff's negligence/gross negligence claim is barred by the doctrine of absolute immunity, set forth in Mich. Comp. Laws § 691.1407(5). (Defs.' Mot. Br. at 7.) In response, Plaintiff appears to conflate the state and federal claims. The response contains a heading entitled, "Sheriff Bouchard is not entitled to absolute immunity to his negligence/gross negligence in his official capacity." (Resp. at 15.) The text under the heading, however, does not mention negligence/gross negligence or absolute immunity. (*Id.* at 15-17.) Instead, it discusses the Eighth Amendment deliberate indifference claim. (*Id.*)

Under Mich. Comp. Laws § 691.1407(5), "the elective or highest appointive executive official of all levels of government [is] immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her . . . executive authority." Also, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407(1). A "governmental agency" is defined as "the state or a political subdivision," Mich. Comp. Laws § 691.1401(d), and a political subdivision includes a county, Mich. Comp. Laws § 691.1401(c).

Plaintiff does not contend that Sheriff Bouchard was acting outside the scope of his authority. As the highest elective official in the Oakland County Sheriff's Office, Sheriff Bouchard is immune from Plaintiff's negligence/gross negligence claim. *See* Mich. Comp. Laws § 691.1407(5). Also, Oakland County is immune from tort liability because it is a governmental agency that was exercising a governmental function, i.e.

housing inmates awaiting trial. *See* Mich. Comp. Laws § 691.1407(1). Accordingly, it would be futile for Plaintiff to amend his complaint to allege a negligence/gross negligence claim against Oakland County.

## C. Unnamed Defendants

Defendants argue that the claims against the unnamed Defendants should be dismissed because they are barred by the statute of limitations. (Defs.' Mot. Br. at 8-10.) Defendants assert that Plaintiff will eventually have to amend his complaint to name these individuals and that any amendment will occur after the statute of limitations has expired. (*Id.* at 9.) Plaintiff argues that he should be permitted to amend his complaint after concluding discovery and that the amendment should relate back to the date of the filing of the complaint. (Resp. at 10-15.) Plaintiff also argues that equitable tolling applies because Defendants have fraudulently concealed the identity of the unnamed Defendants. (*Id.*)

The parties agree that a three-year statute of limitations applies to Plaintiff's claims. (Defs.' Mot. Br. at 8; Resp. at 11.) The events giving rise to Plaintiff's claims occurred "in the early weeks of October 2006." (Compl. ¶¶ 30-47.) Therefore, the statute of limitations on Plaintiff's claims expired in the "early weeks" of October 2009. *See Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir.2005); *Moll v. Abbott Labs.*, 506 N.W.2d 816, 824 (Mich. 1993). If Plaintiff later seeks to name the unknown Defendants, then it would occur after the statute of limitations had run. The Sixth Circuit considers the naming of the unknown Defendants "a change in parties, not a mere substitution of parties. Therefore, the requirements of Fed. R. Civ. P. 15(c) must be met in order for

the amendment adding the named defendant to relate back to the filing of the original

complaint." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

Under Federal Rule of Civil Procedure 15(c), an amendment relates back to the

filing of the complaint when:

> (C) the amendment changes the party or the naming of the party against
> whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and complaint, the
> party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be
> > prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have
> > been brought against it, but for a mistake concerning the
> > proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Plaintiff cannot demonstrate that the requirements of Rule 15(c) are met. It is

unclear whether the "John Does" received notice of this action because they may no

longer work for Oakland County, given the events took place over three years ago.

More fundamentally, though, Plaintiff cannot demonstrate that he made a "mistake

concerning the proper party's identity" because suing the unnamed Defendants was not

a mistake. *See Cox*, 75 F.3d at 240 ("Sixth Circuit precedent clearly holds that new

parties may not be added after the statute of limitations has run, and that such

amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B)."); *cf.*

*Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("The

precedent of this circuit clearly holds that an amendment which adds a new party

creates a new cause of action and there is no relation back to the original filing for

purposes of limitations." (citation, quotation marks, and alteration omitted)).

Plaintiff argues that his claims are not barred by the statute of limitations because equitable tolling applies. (Resp. at 10-15.) Plaintiff asserts that Defendants fraudulently concealed the identity of the "John Does" when it did not locate any records in response to Plaintiff's former counsel's Freedom of Information Act requests. (*Id.* at 12.) Plaintiff contends that pursuant to Mich Comp. Laws § 600.5855, he has two years from the time he discovered the claim, and he claims he did not regain his memory until October of 2008. (*Id.* at 11-12.) Thus, Plaintiff requests leave to amend his complaint to name the "John Does" by August of 2010. (*Id.* at 14.)

"Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Michigan law governs the rules for equitable tolling as to Plaintiff's § 1983 claim and negligence/gross negligence claim. *See id.* at 394. Under Michigan law,

> [i]f a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws § 600.5855. "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004) (quoting *Tonegatto v. Budak*, 316 N.W.2d 262 (Mich. Ct. App. 1982)). "If there is a known cause of action there can be no fraudulent concealment which will interfere with

the operation of the statute, and in this behalf a party will be held to know what he ought to know." *Id.* (quoting *Weast v. Duffie*, 262 N.W. 401 (Mich. 1935)).

Plaintiff has not established that equitable tolling applies. The two Freedom of Information Act requests that his former counsel made do not establish that Oakland County concealed the identity of the "John Does." In each response, the Oakland County Sheriff's Office references a request for information pertaining to an injury report or fall involving Plaintiff while in the Oakland County Jail in September 2006.[4] (Resp. Ex. D.) The responses then state that "[a]fter carefully searching our records, [the FOIA Coordinator] was unable to locate any documents in reference to your request." (*Id.*) This certainly does not demonstrate the "employment of artifice." *Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d at 405. Plaintiff's counsel apparently requested records from September of 2006, when according to Plaintiff's complaint, the events occurred in the early weeks of October 2006. Moreover, the letter states that the Sheriff's Office carefully searched its records, and Plaintiff has not provided any evidence to the contrary. Also, Plaintiff claims that he regained his memory in October of 2008. If he would have filed suit at this time, he would have had a year to conduct formal discovery to ascertain the identities of the "John Does" before the statute of limitations expired. Thus, he had a known cause of action and failed to diligently pursue it. *Id.* Accordingly, Plaintiff has not demonstrated that equitable tolling applies.

---

[4]Plaintiff has not provided a copy of the actual requests that were made.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' "Motion to Dismiss" [Dkt. # 14] is GRANTED IN PART and DENIED IN PART.  It is denied as to Plaintiff's § 1983 claim against Sheriff Bouchard in his official capacity and is granted in all other respects.  The only claims remaining in this case are Plaintiff's claims against the Michigan Department of Corrections and Plaintiff's § 1983 claim against Sheriff Bouchard in his official capacity.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 9, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 9, 2010, by electronic and/or ordinary mail.

 S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522